UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

REYNALDO PEREZ,

                     Petitioner,

         -v-

WILLIAM LEE,

                     Respondent.

14-CV-5763 (JPO)

OPINION AND ORDER

---

J. PAUL OETKEN, District Judge:

      Petitioner Reynaldo Perez brings this petition for a writ of habeas corpus under 28 U.S.C. § 2254. In 1996, Perez was convicted in state court of second-degree murder and first-degree manslaughter. Perez's mother hired a lawyer to appeal his conviction, but that lawyer did not pursue the appeal. The New York Court of Appeals concluded that Perez had forfeited his right to appeal, and Perez seeks habeas relief on the ground that his appellate counsel was ineffective by failing to file an appeal on his behalf.

      This Court initially denied Perez's petition, concluding that Perez had not met the high bar for relief from the state court's decision. On appeal, the Second Circuit remanded the case to this Court to amplify the record supporting Perez's petition. The Court has now allowed the parties to expand the record, and that expanded record suggests that Perez may not be at fault for his failure to file a timely appeal. Still, because review of the state court's decision is limited to the factual record that was before the state court at the time of its decision, the Court concludes that it cannot consider the additional facts now put forward by Perez. As a result, for largely the same reasons discussed in this Court's previous decision, Perez's petition is denied.

1

I.      Background

On July 10, 1996, a jury in New York Supreme Court, Bronx County, convicted Perez of second-degree murder and first-degree manslaughter.  (ECF No. 13-2 at 2.)  Perez was sentenced to a term of 25 years to life imprisonment for the murder count, as well as a term of 8-1/3 to 25 years for the manslaughter count, resulting in a combined indeterminate sentence of 33-1/3 years to life imprisonment.  (*Id.* at 24.)  Perez's trial lawyer filed a timely notice of appeal on August 1, 1996.  (ECF No. 13-3.)

In January 1997, Perez retained attorney Steven Kartagener as appellate counsel.  (ECF No. 13-13 ¶ 4.)  That month, Kartagener sent a letter to Perez's mother acknowledging a payment of $30,000 to represent Perez during his appeal.  (ECF No. 13-14.)  In May 2003, the Departmental Disciplinary Committee of the First Judicial Department notified Perez's mother that it had determined Kartagener to have violated the Lawyer's Code of Professional Responsibility, resulting in Kartagener's being "formally admonished."  (ECF No. 13-15.)  Specifically, the Committee informed Perez's mother that while "Mr. Kartagener initially performed some work on your son's appeal" after being paid $30,000 to represent Perez, Kartagener "performed no work on your son's appeal for long periods of time," which "constitute[d] neglect of your son's case."  (*Id.*)

Over five years later, in September 2008, Kartagener filed not an appeal, but a motion to vacate Perez's judgment pursuant to New York Criminal Procedure Law § 440.10.  The brief requested vacatur of Perez's judgment on the ground that Perez's trial counsel was ineffective.  (ECF No. 13-4.)  In December 2009, the New York Supreme Court, Bronx County, denied that motion both on the merits and on procedural grounds.  (ECF No. 13-6.)  In February 2010, Kartagener sought leave to appeal the Supreme Court's denial of Perez's § 440.10 motion (ECF No. 13-7), but the Appellate Division denied such leave in April 2010 (ECF No. 13-9).

In August 2012, Perez retained another lawyer, Howard Birnbach. (ECF No. 13-10 ¶ 3.) In November 2012, Birnbach filed a motion to enlarge the time to perfect an appeal, in which he represented that there were "very serious appellate issues." (*Id.* ¶ 11.) Although Birnbach argued that there "can be no explanation or justification" for the "egregious prejudice" resulting from the lack of appellate review of Perez's conviction, Birnbach did not discuss Kartagener or provide any possible reasons for that delay. (*Id.* ¶¶ 5, 9.) The government opposed the motion to enlarge the time to perfect an appeal, and it filed a cross-motion to dismiss the appeal for lack of prosecution. (ECF No. 13-12.) Birnbach subsequently represented on reply that Perez had retained Kartagener and paid him a substantial fee, that Kartagener was admonished for having neglected the appeal, and that Perez "was without funds to retain another attorney" and "did not know that he was entitled to an attorney as an indigent." (ECF No. 13-13 ¶¶ 4-8.) In February 2013, the Appellate Division denied Perez's motion and granted the government's cross-motion. *People v. Perez*, 2013 N.Y. Slip Op. 63657(U) (1st Dep't Feb. 5, 2013).

In May 2013, the Court of Appeals granted Perez leave to appeal the dismissal order. *People v. Perez*, 21 N.Y.3d 946, 968 N.Y.S.2d 8 (2013). In his briefing on that appeal, Perez argued that he should be given leave to appeal in part because of the ineffective assistance of his prior counsel, Kartagener. (*See* ECF No. 13-19 at 5-6 & n.3, 9, 11-12.)

In April 2014, the Court of Appeals affirmed the Appellate Division's decision in an opinion that also disposed of three other similar cases. *People v. Perez*, 23 N.Y.3d 89, 989 N.Y.S.2d 418 (2014). The Court of Appeals understood Perez to argue that his "constitutional rights to a fair appellate process were violated," and that "even if there was no constitutional violation, the Appellate Division abused its discretion in dismissing [his] appeal[]." *Id.* at 99. The court characterized Perez's claim as "more colorable" than the claims of two other

3

appellants, as "Perez had a lawyer—one who was undoubtedly ineffective in failing to perfect the appeal that he was hired to pursue." *Id.* at 100. Still, the court affirmed the denial of leave to appeal. It charged Perez with knowing "at least by 2003, when [Kartagener] was admonished by the Departmental Disciplinary Committee, that his lawyer was neglecting his case." *Id.* The court reasoned, then, that Perez could have obtained another lawyer "[a]t any time in the following nine years, if not sooner"—*i.e.*, before 2012, when Perez retained Birnbach. *Id.* The court acknowledged that Perez's then-counsel, Birnbach, represented in an affirmation that Perez was "without funds to retain another attorney," but it faulted Perez for "offer[ing] no explanation of why he failed to seek assigned counsel." *Id.* Under *People v. West*, 100 N.Y.2d 23 (2003), the court reasoned, "it is not unconstitutional to require a defendant to take some minimal initiative to assure himself adequate representation on appeal." *Perez*, 23 N.Y.3d at 100. The court therefore concluded that the "dismissal of Perez's appeal after his own lengthy neglect of it did not deprive him of any constitutional right." *Id.*

Two judges on the Court of Appeals dissented. In their view, Perez acted sufficiently to pursue his appeal and did not act unreasonably in relying on his counsel, meaning that his failure to appeal was a result of his counsel's shortcomings and not his own. *Id.* at 106-07 (Rivera, J., dissenting).

On July 25, 2014, Perez filed the instant petition. (ECF No. 2.) The government filed an opposition on April 1, 2015. (ECF No. 14.) Perez then filed a memorandum of law in support of his position on April 29, 2015. (ECF No. 16.) On January 6, 2017, Magistrate Judge Barbara Moses issued a report and recommendation that recommended denying Perez's petition. (ECF No. 22 ("Report").) Judge Moses concluded that Perez had filed his petition in a timely manner and exhausted his claim in state courts, but that the state court decision was neither contrary to

4

clearly established federal law, nor an unreasonable determination of the facts in light of the record, rendering habeas relief under 28 U.S.C. § 2254 unavailable.

On February 7, 2018, the Court adopted the Report over objections from Perez and denied his petition. *Perez v. Lee*, No. 14-CV-5763, 2018 WL 740995 (S.D.N.Y. Feb. 7, 2018) (ECF No. 29). Even though Perez argued that Kartagener did work on his behalf between 2008 and 2010 to show that he did indeed pursue his appeal (ECF No. 23), the Court explained that there was no evidence in the record about what transpired between 2003 (when Perez learned of Kartagener's ineffectiveness) and 2008, and between 2010 and 2012 (when Perez hired another lawyer, Birnbach). In the absence of any such evidence, the Court concluded that the decision by the New York Court of Appeals was not contrary to established federal law or an unreasonable determination of fact under 28 U.S.C. § 2254(d). Still, the Court separately determined that Perez had "made a substantial showing of the denial of a constitutional right," 28 U.S.C. § 2253(c)(2), citing Judge Rivera's dissent, and it issued a certificate of appealability. (ECF No. 33.)

On June 20, 2019, the Second Circuit "remand[ed] for reconsideration of the application of Perez's counsel to amplify the record," and it "le[ft] to the discretion of the District Court the extent to which, in its view, the record can be usefully expanded to provide an opportunity to understand the full context of the many years of state and federal proceedings." *Perez v. Lee*, 771 F. App'x 66, 66-67 (2d Cir. 2019) (summary order). The court clarified that in remanding the case, it "intimate[d] no view on the merits of any of the claims asserted." *Id.* at 67.

On remand, the Court allowed the parties to conduct discovery into the reasons for the delay in Perez's appeal, including a deposition of Kartagener. The parties requested and received several extensions of time to complete that discovery and to brief Perez's application to

expand the record and renewed petition under Section 2254. On September 19, 2022, Perez filed a brief, which attached an affidavit from Perez, an affidavit from Kartagener, a transcript of Kartagener's deposition, and a record of Perez's prison visits from 2002 to 2022. (ECF No. 79.) On December 12, 2022, the government filed an opposition and additional exhibits. (ECF Nos. 97, 98.) On January 23, 2023, Perez filed a reply. (ECF No. 99.)

## II.     Legal Standard

Under the Antiterrorism and Effective Death Penalty Act (AEDPA), a federal court may grant a writ of habeas corpus to a state criminal defendant "only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). To grant a writ, the petition must satisfy a "difficult to meet . . . and highly deferential standard for evaluating state-court rulings, which demands that state-court decisions be given the benefit of the doubt." *Cullen v. Pinholster*, 563 U.S. 170, 181 (2011) (internal quotation marks and citations omitted).

Under that standard, a federal court may not grant a writ of habeas corpus "unless (1) the state court's decision was 'contrary to, or involved an unreasonable application of, clearly established [f]ederal law, as determined by the Supreme Court of the United States,' or (2) the state court's decision was 'based on an unreasonable determination of the facts in light of the evidence presented in the [s]tate court proceeding.'" *McCray v. Capra*, 45 F.4th 634, 640 (2d Cir. 2022) (quoting 28 U.S.C. § 2254(d)). As a result, relief is warranted under § 2254 only if "there is no possibility fairminded jurists could disagree that the state court's decision conflicts with [the Supreme] Court's precedents." *Harrington v. Richter*, 562 U.S. 86, 102 (2011). Moreover, "a determination of a factual issue made by a State court shall be presumed to be correct," and the petitioner bears "the burden of rebutting the presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e)(1).

To consider a habeas petition, a federal court must also determine that the petitioner has exhausted all state judicial remedies. *Id.* § 2254(b)(1)(A). A petitioner has done so if he "apprise[s] the highest state court of both the factual and the legal premises of the federal claims ultimately asserted in the habeas petition." *Galdamez v. Keane*, 394 F.3d 68, 73 (2d Cir. 2005). The federal court must also determine that the petition is timely, as a state prisoner must seek habeas relief within one year of his conviction's becoming final. *See* 28 U.S.C. § 2244(d)(1)(A).

### III.   Discussion

In accordance with the Second Circuit's instructions, the Court has allowed discovery into the delay in Perez's direct appeal to permit the Court to assess "the extent to which . . . the record can be usefully expanded to provide an opportunity to understand the full context of the many years of state and federal proceedings." Based on the expanded record, the Court considers Perez's characterizations of his diligence during that time period to be plausible, meaning that Perez's failure to file a timely appeal might be better attributed to his counsel's ineffectiveness than to any error of his own. Under AEDPA, however, federal habeas review is generally limited to the record before the state court at the time the state court rendered its decision. *See* 28 U.S.C. § 2254(d). Here, the New York Court of Appeals did not have the benefit of the additional record evidence that this Court now finds persuasive. Based on the evidence that the Court of Appeals had before it, however, its decision was not contrary to or an unreasonable application of clearly established federal law, nor did it constitute an unreasonable determination of facts in light of the evidence presented before it. *See id.* The Court therefore denies Perez's petition.

#### A.   Additional Evidence on Remand

The New York Court of Appeals determined that Perez had offered "no reasonable excuse for th[e] nine-year delay" between 2003, when Perez first learned of Kartagener's

7

ineffectiveness, and 2012, when Perez then hired another lawyer to pursue his appeal. *Perez*, 23 N.Y.3d at 101. As Judge Moses observed in her Report, the "only quasi-evidentiary filing that even touches on this issue" before the Court of Appeals was a "two-page attorney affirmation filed in opposition to the State's motion to dismiss petitioner's appeal, in which petitioner's [then-]counsel states that he is 'familiar' with various asserted facts, including that Perez 'was without funds to retain another attorney' and 'did not know he was entitled to an attorney as an indigent.'" (Report at 24 (quoting ECF No. 13-13 ¶¶ 1, 7-8).) Thus, even though Perez's failure to appeal from 1997 to 2003 might be attributed to ineffective counsel, Judge Moses concluded—and this Court agreed—that the Court of Appeals was not "obligated to make that [same] assumption with respect to [Perez's] continuing inaction from 2003 to 2012." (*Id.* at 25.)

On remand, however, Perez has adduced additional evidence suggesting that he did indeed take action to try to perfect his appeal between 2003 and 2012. According to Perez, between 2003 and 2005, he "called Kartagener many times to find out the status" of the appeal. (ECF No. 79-2 ¶ 3.) Perez represents that in 2005, "in response to regular entreaties to move the case along, Kartagener sent a copy of a 'brief,' or at least a portion thereof," to a close family friend of Perez. (*Id.* ¶ 5.) Perez pointed out certain errors in the brief to Kartagener during a prison visit in which they discussed the brief, and Kartagener allegedly assured Perez that he would correct those errors and file the final brief. (*Id.*) Perez's family friend continued to advocate on behalf of Perez to Kartagener until 2007, all while Perez "became ever more frustrated with the lack of action." (*Id.* ¶ 7). Kartagener also visited Perez in prison at least four more times between 2005 and 2007, during which time Perez thought Kartagener was continuing to work on the brief. (ECF No. 79-1 at 4.) In 2008, however, instead of filing an appeal, Kartagener filed a motion to vacate Perez's judgment under New York Criminal Procedure Law

8

§ 440.10. (ECF No. 13-13 ¶ 10.) While those proceedings continued through 2010, Perez continued to, in his own words, "naively assume[] that Kartagener was . . . still working on the appeal and that the 440 was in addition to, not in lieu of, the direct appeal." (*Id.* ¶ 10; ECF No. 79-1 at 4-5.)

On Perez's account, then, Perez was diligent with seeking assistance to litigate his case from 2003 to at least 2010, leaving at most a two-year period of potential inaction, from 2010 to 2012. That period of time pales in comparison to the long period in which Perez consistently sought his counsel's assistance, and any inaction during the lengthy proceedings below (if any exists) is potentially understandable given Perez's status as an incarcerated individual without other legal assistance. Based on Perez's account, the delays in his attempts to file an appeal might be better attributed to ineffective assistance of counsel than to Perez's own error.

The government provides a conflicting account based on an affidavit by Kartagener, who frequently explained during his deposition that he does not remember much of what happened during the relevant time period. Kartagener represents in an affidavit that when he reviewed a draft appellate brief with Perez, Perez instructed Kartagener not to file the brief. (ECF No. 79-3 ¶¶ 6-7.) The government therefore contends that the "only logical explanation" for Kartagener's failure to file an appeal on Perez's behalf was that alleged instruction by Perez. (ECF No. 98 at 16-17.) But it is clear from the record, including the Court of Appeals's conclusion that Kartagener was "undoubtedly ineffective in failing to perfect the appeal that he was hired to pursue," *Perez*, 23 N.Y.3d at 100, that Kartagener often failed to zealously advocate on behalf of Perez's behalf despite Perez's efforts to get him to file an appeal. Perez's account—that he requested changes in the brief that Kartagener did not make—is equally plausible as, if not moreso than, Kartagener's.

Moreover, much of Kartagener's affidavit is premised on what he describes as his typical practices, rather than on his recollections of his specific interactions with Perez. For example, although Kartagener represents that "it is highly likely [he] would have likely warned [Perez] that there was a risk that his judgment appeal might not be accepted with further delay," he also concedes that he has "no specific recollection" of giving Perez such a warning. (ECF No. 79-3 ¶ 8.) Similarly, Kartagener represents that he "certainly explained to [Perez] the difference between a judgment appeal and a 440 motion," but he again concedes that he "do[es] not remember when" he so advised Perez. (*Id.* ¶ 9.) And while Kartagener denies that he sometimes ignored Perez's communications, he does so in part based on his general "practice to regularly accept any prison calls from clients to my office and to speak with clients or their family when they called." (*Id.* ¶ 12.)

Even though Kartagener does occasionally purport to recall some details—for example, that Perez instructed him not to file the appellate brief—those recollections must be considered in tandem with Kartagener's admissions that he does not remember much of what transpired. For example, Kartagener attests in his affidavit to having reviewed a draft of the appeal brief with Perez in prison. (*Id.* ¶ 6.) But when that portion of his affidavit was read to him during his deposition, Kartagener responded that he "d[id]n't recall" that episode, and that he "rushed through" reviewing the affidavit "because [he] was asked to get it filed or get it done so that [the government] could file it." (ECF No. 79-4 at 22.) Kartagener also explained during the deposition that he did not remember details on many other topics, such as the timeline of his work on Perez's appellate brief (*id.* at 17), whether the appellate brief was ready to be filed at some point (*id.* at 29 ("Q: "Well, but as far as you were concerned, the brief was ready to be filed, correct? A: It was. It was ready to be—I—I really don't remember.")), what Kartagener

10

and Perez discussed during their prison visits (*id.* at 31-33, 38), and whether he discussed the § 440.10 brief with Perez (*id.* at 44-48).

### B.     AEDPA's Limitation to the State Court Record

Ultimately, however, the Court need not resolve whether Perez's account or Kartagener's account is more credible.  Under 28 U.S.C. § 2254(d), habeas petitioners can obtain relief from state court decisions in two situations, codified under subsections (d)(1) and (d)(2).  Regardless of which subsection Perez intends to invoke, review under both subsections is limited to the record that was before the state court at the time of the state court's decision, meaning this Court cannot consider any of the new evidence provided by Perez (or Kartagener) at this juncture.

Under § 2254(d)(1), which provides for habeas relief if the state court's decision "was contrary to, or involved an unreasonable application of, clearly established Federal law," federal habeas review is "limited to the record that was before the state court that adjudicated the claim on the merits." *Pinholster*, 563 U.S. at 181.  The Supreme Court has explained that § 2254(d)(1) refers to state court proceedings "in the past tense," and that such "backward-looking language requires an examination of the state-court decision at the time it was made." *Id.* at 181-82.  A federal court's review is therefore "limited to the record in existence at the same time[,] *i.e.*, the record before the state court." *Id.* at 182.  That approach "ensures that the state trial on the merits is the main event, so to speak, rather than a tryout on the road for what will later be the determinative federal habeas hearing." *Shoop v. Twyford*, 142 S. Ct. 2037, 2044 (2022) (internal quotation marks and citation omitted); *see also Ridgeway v. Zon*, 424 F. App'x 58, 59-60 (2d Cir. 2011) (summary order) (federal habeas court could consider only the "sparse" state court record because petitioner's claim "was decided on the merits" by a state court, even though "additional information proffered before the District Court appear[ed] to lend some credence to [petitioner's] claims").

Perez gets no further if he instead argues, under 28 U.S.C. § 2254(d)(2), that the state court's decision was "based on an unreasonable determination of the facts." That subsection specifies that the federal court's inquiry must be determined "*in light of the evidence presented in the State court proceeding*." 28 U.S.C. § 2254(d)(2) (emphasis added); *see also Saxon v. Lempke*, No. 09-CV-1057, 2014 WL 1168989, at *36 (S.D.N.Y. Mar. 21, 2014) (concluding that evidence that "was not before the state court . . . cannot be considered when determining [petitioner's] claim pursuant to § 2254(d)(2)").

Either way, then, the law "restricts federal habeas review of claims adjudicated on the merits in state court to the record that was before the state court, regardless of whether review of those claims is sought in federal court pursuant to section 2254(d)(1) or (2)." *Reyes v. Ercole*, No. 06-CV-5525, 2011 WL 1560800, at *2 (S.D.N.Y. Apr. 25, 2011); *see also Licausi v. Griffin*, 460 F. Supp. 3d 242, 259 (E.D.N.Y. 2020) ("The ineffective assistance of counsel review under § 2254 is limited to the record that was before the state court that adjudicated the claim on the merits."). And while AEDPA permits an evidentiary hearing in certain narrow circumstances, Perez does not argue that those circumstances apply here. *See* 28 U.S.C. § 2254(e)(2).

The Court therefore must conduct its analysis based on the evidence that was before the Court of Appeals, which decided the merits of the claim that Perez again makes in this Court. *See Perez*, 23 N.Y.3d at 100. The question, then, is whether the state court's decision "was contrary to, or involved an unreasonable application of, clearly established Federal law" based on the record before it at the time, or "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." *See id.* § 2254(d)(1), (2); *Pinholster*, 563 U.S. at 181. Because the state court decision meets neither of those criteria, Perez's petition must be denied.

As explained earlier, the only evidence before the Court of Appeals supporting Perez's account was a sparse attorney affirmation that Perez "was without funds to retain another attorney" and "did not know he was entitled to an attorney as an indigent." (ECF No. 13-13 ¶¶ 7-8.)  Crucially, the Court of Appeals did not have before it either Kartagener's or Perez's affidavits, which contain the bulk of the facts discussed in the previous section, as they were signed in 2021 and 2022, respectively.  (ECF No. 79-2, 79-3.)  In particular, the Court of Appeals did not have the benefit of Perez's representations about his efforts to work with Kartagener in the years after Kartagener was admonished.

The Court of Appeals therefore reasonably upheld the dismissal of Perez's appeal due to what appeared to be his inaction in pursuing the matter, notwithstanding Kartagener's ineffective assistance.  *See Calaff v. Capra*, 215 F. Supp. 3d 245, 255 (S.D.N.Y. 2016) (denying habeas petition after concluding that the "New York Court of Appeals correctly determined that [petitioner] abandoned his appeal by waiting too many years to prosecute and perfect it"); *see also Taveras v. Smith*, 463 F.3d 141, 149 (2d Cir. 2006) ("New York is entitled to require" a defendant to "satisf[y] reasonable preconditions on her right to appeal as a result of her own conduct," including "timely filing schedules." (internal quotation marks and citation omitted)).

To be sure, the Court of Appeals could have reasonably concluded on the record before it that Perez's failure to file an appeal was the result of ineffective assistance of his appellate counsel and not his own failure.  Indeed, two judges of the Court of Appeals so concluded, *see Perez*, 23 N.Y.3d at 104-07 (Rivera, J., dissenting), and the additional evidence produced on remand further suggests that that may very well be the case.  But the Court of Appeals could also have reasonably concluded—as it did—that based on the dearth of evidence before it about Perez's conduct between 2003 and 2012, Perez had largely abandoned his right to appeal.  *See*

*Wood v. Allen*, 558 U.S. 290, 301 (2010) ("[I]f [r]easonable minds reviewing the record might disagree about the finding in question, on habeas review that does not suffice to supersede the trial court's . . . determination." (internal quotation marks and citation omitted)). Accordingly, the Court cannot conclude that Perez is entitled to relief.

## IV.   Conclusion

For the foregoing reasons, the Court concludes that, as a matter of law, the record cannot be expanded in a manner that would entitle Perez to federal habeas relief under 28 U.S.C. § 2254. Accordingly, Perez's petition is denied.

Although Perez has made a substantial showing of the denial of a constitutional right, relief under Section 2254 is procedurally barred by AEDPA. A certificate of appealability therefore will not issue. *See* 28 U.S.C. § 2253(c)(2); *Slack v. McDaniel*, 529 U.S. 473, 484-85 (2000).

SO ORDERED.

Dated: November 13, 2023
       New York, New York

_____
J. PAUL OETKEN
United States District Judge